UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>and STATE OF MISSOURI,<br><br>　　　　Plaintiffs,<br>　v.<br><br>THE DOE RUN RESOURCES CORPORATION,<br><br>　　　　Defendant. | **COMPLAINT**<br><br>Case No. __18-502__ |

　　　　The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Missouri, by the authority of the Missouri Attorney General, acting on behalf of the Missouri Department of Natural Resources, file this complaint and allege as follows:

NATURE OF THE ACTION

　　　　1.　　　　This is a civil action brought against The Doe Run Resources Corporation ("Doe Run" or "Defendant") pursuant to Sections 106, 107(a), and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606, 9607(a), and 9613(g), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), and the Missouri Hazardous Waste Cleanup Law, §§ 260.500 to 260.550 RSMo, and the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430, RSMo regarding Operable Unit 1 (OU-1) of the Big River Mine Tailings Superfund Site in St. Francois County, Missouri ("Site").  Plaintiffs seek the recovery of their unreimbursed response costs incurred, and to be incurred, and the performance of response actions by the Defendant consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").  In the event of any conflict between

CERCLA and the Missouri Hazardous Waste Cleanup Law or the Missouri Hazardous Waste Management Law, CERCLA and the NCP shall take precedence over Section 260.500 to 260.550 RSMo or 260.350 to 260.430 RSMo. The United States also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), holding the Defendant liable for all future response costs that will be binding in any subsequent action or actions to recover further response costs incurred by the United States or the State at or in connection with OU-1 of the Site.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action and over the Defendant under 28 U.S.C. §§ 1331, 1345, and 1367, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), both because the relevant releases or threatened releases of hazardous substances occurred within this district and because the Defendant has its principal place of business within this district.

## STATUTORY FRAMEWORK

4.     CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a); 9601(25).

5.     Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an

imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment. When the President determines that such action will be done properly and promptly by the owner or operator of the facility or vessel or by any other responsible party, the President may allow such person to carry out the action, conduct the remedial investigation, or conduct the feasibility study in accordance with section 9622 of this title.

6. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders.

7. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

(1) [T]he owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [or]

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . .

shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . .

8. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also authorized to seek injunctive relief necessary to abate the imminent and substantial

3

endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

9. Section 260.530, RSMo provides in pertinent part:

> Any person having control over a hazardous substance shall be strictly liable to the state of Missouri for the reasonable clean up costs incurred by the state as a result of the failure of such person to clean up a hazardous substance involved in a hazardous substance emergency in accordance with the requirements of sections 260.500 to 260.550 and rule promulgated by the department pursuant thereto. If such failure is willful, the person shall, in addition, be liable for punitive damages not to exceed triple the clean up costs, incurred by the state.

THE SITE

10. The Site is located in southeastern Missouri about seventy miles south of St. Louis, within St. Francois County, Missouri.

11. Lead mining began in St. Francois County in the early 1700s and was continuous from the mid-1700s until the mid-1970s.  During this approximately 200 year period of intensive lead mining, the mines, milling operations, and associated facilities in the county became known as Missouri's "Old Lead Belt"

12. Between 1864 and 1970, more than eight million tons of lead concentrate were produced in the Old Lead Belt.  Production of this concentrate created an estimated 250 million tons of waste, primarily in the form of chat and tailings.  Chat is relatively coarse-grained rock fragments produced during the milling process and transported to large waste piles that eventually reached as much as 200 feet in height.  Tailings, a finer-grained waste product of later milling technologies, were disposed via discharge into liquid impoundments covering as much as several hundred acres, known as tailings ponds.

13. The Site contains eight large distinct chat pile and tailings pond areas, which together cover thousands of acres:  Desloge (also called Big River); National; Leadwood; Elvins (also called Rivermines); Bonne Terre; Federal (which contains St. Joe State Park); Doe Run; and Hayden Creek (collectively, the "Waste Piles")

14. The Waste Piles contain hazardous substances such as lead, cadmium, and zinc.

15. Numerous environmental investigations have been conducted in St. Francois County.  These investigations show that mine waste materials containing lead, cadmium and zinc have migrated from the Waste Piles via wind erosion, bank erosion, storm water runoff, leachate and mechanical transport.  As a result, surface waters, sediments, and soils, including residential soils, in St. Francois County contain elevated levels of lead, cadmium and zinc.

16. OU-1 of the Site comprises all residential yards (a term which includes properties that contain single and multi-family dwellings, apartment complexes, vacant lots in residential areas, schools, daycare centers, playgrounds, parks, and greenways) within St. Francois County where lead has come to be located.

17.  Lead is a metal that has been listed as a hazardous waste ("D008") in the regulations for the Resource Conservation and Recovery Act ("RCRA").  EPA classifies lead as a probable human carcinogen and as a cumulative toxicant.  Exposure to lead can increase the risk of future adverse health effects, such as damage to the central nervous system, peripheral nervous system, and kidney and blood disorders.  Lead poisoning causes decreased physical fitness, fatigue, sleep disturbance, headache, aching bones and muscles, digestive symptoms (particularly constipation), abdominal cramping, nausea, vomiting, and decreased appetite.  With increased exposure, symptoms include anemia, pallor, a "lead line" on the gums, and decreased hand grip strength.  Central nervous system effects include severe headaches, convulsions, coma,

5

delirium, and possibly death.  The kidneys can also be damaged after long periods of exposure to lead, with loss of kidney function and progressive azotemia.  Reproductive effects in women include decreased fertility, increased rates of miscarriage and stillbirth, decreased birth weight, premature rupture of membrane, and/or pre-term delivery.  Reproductive effects in men include erectile dysfunction, decreased sperm count, abnormal sperm shape and size, and reduced semen volume.  A significant amount of lead that enters the body is stored in the bone for many years and can be considered an irreversible health effect.

18. Young children (typically defined as seven years of age or below) are the most sensitive population group potentially exposed to lead contamination at the Site. Young children are most susceptible to lead exposure because they have higher contact rates with soil and dust, absorb lead more readily than adults, and are more sensitive to the adverse effects of lead than older children-and adults. The effect of exposure to lead contamination of greatest concern in children is impairment of the nervous system, including learning deficits, lowered intelligence, and adverse effects on behavior.

19. In May 1997, the Missouri Department of Health and Senior Services ("MDHSS") released a draft Lead Exposure study of children in the Old Lead Belt of St. Francois County.  The MDHSS study, included sampling children's blood, sampling environmental media such as soil and dust, and questioning residents about their lifestyle as it related to lead exposure.  The study compared the results of blood lead levels collected from children in the Old Lead Belt of St. Francois County to blood lead level test results collected from children during the study on a control area, Salem, Missouri, located outside the Site.  In the Old Lead Belt, about 17% of the children tested showed a blood lead level of more than 10

micrograms/deciliter whereas only about 3% of the children in Salem showed a blood lead level of more than 10 micrograms/deciliter.

20. EPA conducted a Baseline Human Health Risk Assessment ("HHRA") for the Site in 2009. The HHRA assesses the potential risks to humans, both present and past, from Site related contaminants present in environmental media including surface soil, indoor dust, sediment, surface water, groundwater, and fish tissue. The results of the HHRA are intended to inform risk managers and the public about potential human health risks attributable to site-related contaminants and to help determine if there is a need for action at the Site.

21. The HHRA identified lead as the primary contaminant of concern for OU-1 of the Site.

22. In accordance with the NCP, EPA issued a Record of Decision (ROD) for OU-1 on September 30, 2011. EPA's selected Remedial Action, as fully set forth in the ROD, calls for the excavation of soil from residential yards until lead concentrations in the top 12 inches are below 400 parts per million, or below 1,200 parts per million below 12 inches down to 24 inches below the surface. Based on current sampling, EPA estimates that 4,800 residential yards may ultimately be addressed within the Response Area (which comprises the portions of the Site within one mile of any of the Waste Piles) as part of the Remedial Action.

DEFENDANT

23. Doe Run is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), incorporated in New York and licensed to do business in the State of

7

Missouri, with its corporate office located at 1801 Park 270 Drive, Suite 300 in St. Louis, Missouri.

24. Doe Run is the successor to St. Joseph Lead Company, St. Joe Minerals Corporation, and the Doe Run Lead Company.

25. During the 19th and 20th centuries, Doe Run and its predecessors mined, milled, and/or owned mine facilities in the Big River Mine Tailings Superfund Site.  These activities created large piles of tailings, mill waste, and other mine waste within St. Francois County.

26. Doe Run owned and, at various times, operated all of the Waste Piles and/or their associated mining or milling facilities.

27. Doe Run presently owns all or a portion of the Desloge (Big River), National, Leadwood, Elvins, and Bonne Terre piles.

28. Beginning in the early 1920s, Doe Run and/or its predecessors allowed individuals and corporate entities to remove chat and tailings from some of the Waste Piles for transport to their homes and subsequent placement in yards, gardens, sand playlots, and other locations.  Some of these individuals and corporate entities were allowed to take waste materials for free, while others paid for the waste materials.

29. Individuals within St. Francois County also sometimes took chat and/or tailings for subsequent use in yards, gardens, and play lots from some of the Waste Piles that Doe Run and/or its predecessors left unsecured.

GENERAL ALLEGATIONS

30. Hazardous substances, including lead, were released from the Waste Piles during the times that Doe Run or its predecessors owned and/or operated the Waste Piles.

31. Doe Run and/or its predecessors by contract, agreement, or otherwise, arranged for the disposal of hazardous substances, including lead, from the Waste Piles.

32. The Site was listed on the National Priorities List, created by Section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B), on October 14, 1992. See 57 Fed. Reg. 47180.

33. EPA has conducted various response actions at the Site.

34. As a result of these response actions, EPA has incurred response costs in connection with the Site.

CLAIMS FOR RELIEF

**COUNT I – PRESENT OWNER LIABILITY**

35. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

37. Each of the Waste Piles is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

38. There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at or from each of the Waste Piles and the Site.

39. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the releases or threatened releases of hazardous substances at or from the Waste Piles and the Site.

40. The State of Missouri has incurred cleanup costs, within the meaning of Section 260.500(2) of the Missouri Hazardous Waste Management Law, related to the release of

hazardous substances in quantities equal to or in excess of those determined pursuant to Section 101(14) or 102 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, and Section 304 of the Superfund Amendments and Reauthorization Act of 1986, as amended.

41. The United States' response actions at the Site are not inconsistent with the NCP.

42. The Defendant is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owns a facility.

43. Pursuant to Section 107(a) of CERCLA, Defendant is liable to the United States and the State for response costs incurred in connection with the Site.

## COUNT II – PAST OWNER/OPERATOR LIABILITY

44. Paragraphs 1 through 41 are realleged and incorporated by reference.

45. Defendant is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owned or operated a facility at the time of the disposal of hazardous substances at such facility.

46. Pursuant to Section 107(a) of CERCLA, Defendant is liable to the United States and the State for response costs incurred in connection with the Site.

## COUNT III – ARRANGER LIABILITY

47. Paragraphs 1 through 41 are realleged and incorporated by reference.

48. Defendant is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as a person who by contract, agreement, or otherwise, arranged for the disposal by other parties of hazardous substances the Defendant owned or possessed.

49. Pursuant to Section 107(a) of CERCLA, Defendant is liable to the United States and the State for response costs incurred in connection with the Site.

## COUNT IV – LIABILITY FOR PERFORMANCE OF REMEDIAL ACTION

50. Paragraphs 1 through 41 are realleged and incorporated by reference.

51. The actual and threatened releases of hazardous substances, including lead, at the Site may constitute an imminent and substantial endangerment to public health or welfare or the environment.

52. Implementation of the Remedial Action selected in the ROD for OU-1 is necessary to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances, including lead, at the Site.

53. Pursuant to Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), Defendant is liable for the performance of the Remedial Action.

## COUNT V – CLAIM FOR RECOVERY OF CLEANUP COSTS

54. Paragraphs 1 through 53 are realleged and incorporated by reference.

55. Hazardous substances, including lead, were released at the Site in quantities equal to or in excess of those determined pursuant to Section 101(14) or 102 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, and Section 304 of the Superfund Amendments and Reauthorization Act of 1986, as amended.

56. Due to the release of hazardous substances at the Site, including lead, Defendant is strictly liable to the State of Missouri for cleanup costs, as defined in Section 260.500(2) RSMO.

## PRAYER FOR RELIEF

57. Wherefore, Plaintiffs the United States and the State of Missouri respectfully request that this Court:

a.  Enter judgment in favor of the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding the Defendant liable for all unreimbursed costs incurred by the United States in connection with OU-1 of the Site, including interest;

b.  Enter judgment in favor of the State under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Missouri Hazardous Waste Cleanup Law, §§ 260.500 to 260.550 RSMo, and the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430, holding the Defendant liable for all unreimbursed cleanup costs incurred by the State regarding OU-1 of the Site, including interest;

c.  Enter judgment in favor of the United States, under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), holding Defendant liable for the performance of the Remedial Action selected in the ROD for OU-1 of the Site;

d.  Enter a declaratory judgment of liability against Defendant that will be binding in any action to recover further response costs incurred by the United States in connection with OU-1 of the Site.

e.  Award the United States and the State their costs of this action; and

f.  Grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA:

4/2/18
Dated

JEFFREY H. WOOD
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530


Eric D. Albert
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611

**FOR THE STATE OF MISSOURI**:

<u>01/26/18</u>
Dated

          Shawna Bligh
          Assistant Attorney General
          Agriculture and Environment Division
          P.O. Box 899
          Jefferson City, MO  65102